IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCO HERNANDEZ, et al., )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MULTI-SERVICIOS LATINO, INC., et al., )<br>)<br>)<br>)<br>Defendants. ) | Case No. 16-cv-10747<br><br>Judge Gettleman<br>Magistrate Judge Schenkier |

**CERTAIN STAFFING AGENCY DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS COUNTS I-IV, XI-XV, AND XVI-XIX OF PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(6)**

NOW COME Defendants Ron's Temporary Help Services, Inc., Elite Staffing, Inc., and Flexible Staffing Services, Inc., (the "Staffing Agency Defendants"), by and through their undersigned counsel, and for their Reply in support of their Joint Motion to Dismiss Counts I-IV, XI-XV, and XVI-XIX of Plaintiffs' Fourth Amended Class Action Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), state as follows:

**I.     INTRODUCTION**

Plaintiffs' Response to the Motions to Dismiss the Fourth Amended Complaint begins with nearly eight pages of conjecture and alleged public policy arguments and is replete with allegations that appear nowhere in any of the five iterations of the complaint. Although Plaintiffs attempt to frame the issues in this Motion to Dismiss as "very simple and straightforward," they ignore that they failed to provide this Court with a basis to find plausible violations of the IWPCA, IMWL, IDTLSA, or FLSA by any individual Staffing Agency Defendant.

1

Plaintiffs make much of the alleged "scheme" between the Staffing Agency Defendants and the *Raiteros*, but their RICO counts have been dismissed with prejudice in this suit already. Any allegation of a scheme is irrelevant to whether Plaintiffs have, on their fifth attempt, managed to adequately plead that the Staffing Agency Defendants violated any of the statutes upon which their claims are based. Further, this Court should recognize that Plaintiffs' claims against the Staffing Agency Defendants are entirely dependent upon an unsupported legal assumption that the Staffing Agency Defendants can be liable for the actions of the *Raitero* Defendants based on "joint employer" or agency theories. Not only do Plaintiffs fail to offer any legal support for their theories, they fail to plead a plausible basis for the Court to find that such relationships exist between any particular Staffing Agency Defendant and any specific *Raitero* Defendant, as Plaintiffs have impermissibly treated these categories of defendants as indistinguishable. As discussed below, the exhibits Plaintiffs supplied with their Response demonstrate that these across the board allegations are not plausible.

Plaintiffs' public policy arguments are similarly unrelated to the issues put forth by the Motion to Dismiss. This is not, as Plaintiffs claims, a case about "whether the staffing industry can be regulated" and Defendants are not asking the Court to "eviscerate the IDTLSA" and the "protections provided" to temporary laborers. (Dkt. 234 at 3). Plaintiffs' hyperbole aside, the issue in this Motion is whether Plaintiffs' Fourth Amended Complaint has finally pled a claim for violations of the IWPCA, IMWL, IDTLSA, or FLSA. Plaintiffs have not, and their claims against the Staffing Agency Defendants should be dismissed with prejudice.

## II. STANDARD OF REVIEW

It should be noted that all of the cases cited by Plaintiffs in their recitation of the standard of review applicable to Rule 12(b)(6) motions to dismiss were decided prior to *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) and all but two prior to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In particular, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs cannot simply affix convenient labels to the defendants by asserting, without support, that contractual, joint employment, or agency relationships exist among the defendants. *Id*.

In addition, Plaintiffs' response is full of allegations and information not contained anywhere within the FAC. Although a plaintiff may assert additional facts in a motion to defeat dismissal, he or she cannot amend his or her complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). Moreover, as discussed below, the exhibits Plaintiffs supplied only highlight that the Staffing Agency Defendants did not interact with the Plaintiffs and the *Raitero* Defendants in the same manner or to the same extent. Plaintiffs have not stated plausible claims against any of the Staffing Agency Defendants because they cast too wide of a net when they opted to rely on improper blanket allegations in their Fourth Amended Complaint. For these reasons as well, this Court should dismiss Plaintiffs' claims with prejudice.

### III. ARGUMENT

#### A. Plaintiffs Have Not Stated A Claim For Unlawful Deductions Under The IWPCA Or The IDTLSA

Plaintiffs' Response argues that they have stated a claim for unlawful deductions by pointing to alleged "schemes" by Staffing Agency Defendants to pass on the costs of transportation to their laborers. However, the only authority cited by Plaintiffs for these alleged "schemes" are a complaint filed in another, unrelated lawsuit by the same attorneys that represent Plaintiffs in this lawsuit, *Rojo et al. v. Staffing Network Holdings, LLC, et al.*, No. 13 C 3181 (N.D. Ill.), Dkt. 41, and an article published by ProPublica on April 29, 2013, that does not mention Ron's Temporary Help Services, Inc., Elite Staffing, Inc., or Flexible Staffing Services, Inc. Plaintiffs

3

fail to provide this Court with any legal authority to suggest that these purported schemes have any legal significance as to either the IWPCA or the IDTLSA.

Plaintiffs continue to refer to a "scheme" in an attempt to lump all Staffing Agency Defendants together because they cannot state a claim against each one separately. Whether a "scheme" existed is no longer an issue because Plaintiffs' RICO claims were dismissed and has no bearing on whether Plaintiffs have stated a claim under the IWPCA or IDTLSA. This is especially true since Plaintiffs provided an affidavit from a branch supervisor of J&P Check Cashing showing that Plaintiffs consented to the payments to the *Raiteros* at the currency exchange. (Dkt. 234-4 ¶¶ 8, 10) ("If a worker came to pick up his/her check without cashing it at J&P, our J&P cashier would make a copy of the check and have the worker sign that they received the check and released the check immediately…. If the worker wanted to cash it at J&P, a cashier would ask if they wanted to pay their rides to Mr. Aguilar. If they said yes, the cashier would write down the name of the customer, and deposit the amount paid for the rides in an envelope to be held for Mr. Aguilar.") The Court should also note that the affidavit makes no mention of Defendant Elite, which underscores that Plaintiffs cannot plausibly allege that all Staffing Agency Defendants should be considered indistinguishable from each other for purposes of Plaintiffs' pleading.

In addition, Plaintiffs do not allege that the Staffing Agency Defendants took the alleged deductions from Plaintiffs' paychecks. Rather, Plaintiffs' theory is that a deduction occurred when a check cashing agency took a portion of the monies from the cashed checks and gave it to a *Raitero*. Their arguments over what might happen <u>after</u> the Staffing Agency Defendants issue paychecks are not "deductions" under the IWPCA or IDTLSA. Nor do Plaintiffs provide legal support or identify language in the IWPCA or the IDTLSA to support their theory.

Plaintiffs erroneously attempt to re-cast their claim as the same type of deduction as those for cash or inventory shortages. (Dkt. 234 at 11). By doing so, Plaintiffs point to a regulation that prohibits an employer from deducting from paychecks or demanding reimbursement from an employee for cash shortages without the employee's written consent. *See* 56 Ill. Adm. Code § 300.730. There is no allegation that the Staffing Agency Defendants received any money after the Plaintiffs' paychecks were cashed, so there could be no reimbursement. This regulation has no application to this case because no Staffing Agency Defendant demands reimbursement or receives money back from a Plaintiff after issuing its paycheck.

Plaintiffs have provided this Court with no legal basis to find that the IWPCA or the IDTLSA applies to the scenario they describe in their pleading. Plaintiffs misstate the findings in *Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2015 WL 832409 (N.D. Ill. Feb. 25, 2015) and *Franks v. MKM Oil, Inc.*, No. 10 C 00013, 2012 WL 3903782 (N.D. Ill. Sept. 7, 2012). Neither of the cases found cash payments to employers to be "deductions" for purposes of the IWPCA. *Jenkins* involved a procedural ruling on a class certification motion and a reimbursement for cash shortages. 2015 WL 832409 at *6. In *Franks*, the Court specifically stated that the "term 'pay deduction' is a misnomer" where employees made a cash payment to a manager. 2012 WL 3903782 at *7.

Similarly, Plaintiffs' claim that the charges for rides and applications were deducted from their pay before they received their cash wages does not save their case. (Dkt. 234 at 11-12). As stated above, the affidavit that Plaintiffs themselves submitted shows that Plaintiffs chose to make payments to the *Raiteros* and could have elected to not cash their paycheck at that particular currency exchange or to cash their paycheck without making any payment to the *Raiteros*. (Dkt. 234-4 ¶¶ 8, 10, 11). Further, Plaintiffs' reliance on an unsigned revocation order from the Illinois

5

Department of Financial and Professional Regulation ("IDFPR") against one of the former Currency Exchange Defendants has no bearing on Plaintiffs' IWPCA or IDTLSA claims in the FAC because it involved one currency exchange who is no longer part of this lawsuit. This is yet another example of how Plaintiffs attempt to lump all Staffing Agency Defendants together (including an entity who is no longer party) in order to mask their inability to state a claim against any individual Staffing Agency Defendant.

For these reasons, Plaintiffs' unlawful deduction allegations under the IDTLSA and IWPCA must be dismissed.

### B. Plaintiffs Do Not State A Claim Under The IDTLSA For Charging For Rides Because Defendants Are Not Responsible For The Conduct Of The *Raitero* Defendants Under Section 20(b) Of The IDTLSA

Plaintiffs' Response simply repeats the conclusion that the *Raiteros* were agents of or joint employers with the Staffing Agency Defendants without pointing to any specific factual allegations or legal authorities to support those conclusions. Under Section 20(b) of the IDTLSA, a staffing agency is *not* responsible for the conduct of a person who transports temporary laborers to/from worksites where the transporter is a vehicle *selected exclusively by and at the sole choice of the temporary laborer* in a vehicle not owned or operated by the staffing agency. 820 ILCS 175/20(b). Plaintiffs do not allege that the *Raitero* Defendants owned or operated a Staffing Agency Defendant vehicle.[1] Plaintiffs also do not allege that any specific Staffing Agency Defendant compelled any of the Plaintiffs to accept rides from any of the *Raitero* Defendants. To the contrary, Plaintiffs' Exhibit A suggests that Plaintiffs had been accepting rides from *Raiteros* for years before working for Defendant Elite, as Plaintiffs provided this Court with paystubs from

---

[1] Plaintiffs' response cites to allegations in the FAC that Plaintiffs were forced to complete applications and take rides for a fee in order to get work. However, the citations to Paragraphs 3, 67, 72-74 of the FAC do not support this argument.

6

2015. *Compare* Pl. Ex. A, Dkt No. 234-1. *with* Pl. *Hernandez* FAC, Dkt. 218, ¶¶ 12.d., 18.d; Pl. *Marquez* FAC, Dkt. 171, ¶¶ 12.c., 13.d., 15.d (Plaintiffs began taking rides with the *Raiteros* in 2006).

Plaintiffs' "charge for rides" theory is entirely based on conclusory allegations that there was either a joint employer or agency relationship between the Staffing Agency Defendants and the *Raitero* Defendants. Even if this Court could assume that these concepts had any application to the IDTLSA, which this Court should not because Plaintiffs have supplied no legal basis to do so, "[a] complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusions of agency." *Williams v. Ford Motor Co.*, 990 F. Supp. 551, 554 (N.D. Ill. 1997). "Under traditional approach, an agency relationship requires that a principal direct an agent to act for the principal's benefit, the agent to consent, and the principal to have the power to control the agent's actions." *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 652 (7th Cir. 2012). The FAC is devoid of any allegations that the Staffing Agency Defendants directed the *Raitero* Defendants to do anything, or that the Staffing Agency Defendants possessed the power to control the actions of the *Raitero* Defendants. Again, Plaintiffs' Exhibit A demonstrates that the relationships between Plaintiffs and the *Raiteros* pre-date Plaintiffs' relationships with some of the Staffing Agency Defendants by many years, which only serves to underscore that Plaintiffs cannot state a plausible claim against any Staffing Agency Defendant by lumping all of them together in their pleading. They cannot affix labels to issues that cannot otherwise be supported by well-pled allegations.

The FAC and Response are similarly deficient as to the claim that the Staffing Agency Defendants and *Raitero* Defendants were "joint employers." Section 20(b) only refers to "agent"

7

and there is no reference to a joint employer. Even if this Court can assume that "joint employment" has any significance under the IDTLSA, which it should not, as stated in the Motion, "an entity other than the actual employer may be considered a 'joint employer' only if it exerted significant control over" the employee. *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 810 (7th Cir. 2014) (quoting *G. Heileman Brewing Co. v. NLRB*, 879 F.2d 1526, 1530 (7th Cir. 1989)). "[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Id.* (quoting *Moldenhauer v. Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). For example, Plaintiffs' Exhibit A demonstrates that Plaintiffs' contention that the Staffing Agency Defendants were joint employers are baseless. As reflected by Plaintiffs' Exhibit A, between January 1, 2015 and April 12, 2015, Plaintiff Marquez had worked a total of 18 hours for Elite, *i.e.*, less than a full workweek. Dkt. No. 234-1, p.2. The Court should not infer that Elite, in this example, somehow was co-managing Plaintiff Marquez's employment with a *Raitero* Defendant or anyone else since 2006, given that she was working so infrequently for Defendant Elite. FAC, Case No. 16 C 10748, [Dkt. No. 171], ¶ 15. The Court should not infer that the Staffing Agency Defendants were involved in the sort of coordinated set of joint employment and agency relationships Plaintiffs generically and speculatively allege, as the documents Plaintiffs have presented to the Court as Exhibit A to their own Response underscore that it is not plausible for the Court to infer that Plaintiffs' allegations apply across the board. *See Smajlovic v. Ann & Robert H. Lurie Children's Hosp.*, No. 15-cv-01243, 2016 U.S. Dist. LEXIS 86591, at *11 (N.D. Ill. July 5, 2016) ("[W]here an exhibit to the complaint conflicts with the plaintiff's allegations, the exhibit typically controls.").

As Plaintiffs cannot dispute, Section 20(b) provides that the Staffing Agency Defendants have no liability under the IDTLSA when the plaintiff chooses their own transportation in a vehicle that is not owned by the Staffing Agency Defendant. Plaintiffs cannot refute that Section 20(b) controls here because Plaintiffs do not allege that any Staffing Agency Defendant forced Plaintiffs to accept rides from the *Raiteros* beginning in 2006, the dates when Plaintiffs allege that their relationships with the *Raiteros* began. Accordingly, Plaintiffs have not stated a claim under Section 20(b) of the IDTLSA.

### C. Plaintiffs' FLSA And IMWL Minimum Wage Claims Should Be Dismissed Because They Are Predicated On Stating A Claim For Unlawful Deductions, And Plaintiffs Do Not Allege Facts Establishing A Minimum Wage Violation

Plaintiffs' FLSA and IMWL claims are premised on the fact that when Plaintiffs allegedly paid the *Raitero* Defendants for transporting them, their pay fell below minimum wage. In order to state a claim, Plaintiffs must allege how this was the case as to each Staffing Agency Defendant for at least one workweek, but they do not. *See Hirst v. SkyWest, Inc.*, 283 F. Supp. 3d 684, 692 (N.D. Ill. 2017), *aff'd in part*, ___ F.3d ___, 2018 U.S. App. LEXIS 34926 (7th Cir. Dec. 12, 2018). Again, Plaintiffs have lumped multiple Staffing Agency Defendants together; however, their wages paid by each Staffing Agency Defendant are different. This point is proven by Exhibit A to the Response, which shows that Plaintiff Flores was paid $8.40 per hour; well above the federal minimum wage of $7.25 per hour and above the Illinois minimum wage of $8.25 per hour. (Dkt. 234-1). Plaintiffs have not alleged facts showing the rates that they earned at each of the Staffing Agency Defendants, the amount that they were charged for rides in a given workweek, and/or if they paid an application fee because Plaintiffs' allegations suggest that it was a one-time fee.

9

It is further unclear how the purported charges could cause Plaintiffs' wages to fall below the Illinois minimum wage ($8.25/hour) every week but below the federal minimum wage ($7.25/hour) only in "most weeks" they worked for the Staffing Agency Defendants. *Compare* 820 ILCS 105/4(a)(1) *with* 29 U.S. Code § 206(a)(1)(C). Although Plaintiffs cite to a number of cases they believe support their less than specific pleading, they ignore the cases of *Hebron v. DirecTV, LLC,* No. 14 C 8155, 2015 WL 6164954 (N.D. Ill. Oct. 13, 2015), and *Hirst v. Skywest, Inc.*, No. 15 C 02036, 2016 WL 2986978 (N.D. Ill. May 24, 2016). The *Hebron* court dismissed the complaint, finding that, like here, the plaintiffs did not adequately plead facts that the failure to reimburse plaintiffs for chargebacks and business expenses caused their hourly rate to fall below the minimum wage because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hebron,* 2015 WL 6164954, at *5 (quoting *Iqbal*, 556 U.S. at 678).

In *Hirst v. Skywest, Inc.*, the Court dismissed the FLSA claims, stating that Plaintiffs had failed to state a FLSA claim under the workweek averaging approach because they had failed to plausibly allege at least one workweek for which the compensation they received, divided by their total compensable time, failed to meet the FLSA minimum wage of $7.25 per hour. 2016 WL 2986978 at *6. *See also Hirst v. Skywest, Inc.*, Nos. 17-3643 and 17-3660, 2018 WL 6519742 (7th Cir. 2018), affirming dismissal of the FLSA claims, ("Claiming they worked many hours and citing several weeks in which they *were* paid the minimum wage is not enough to render their claims plausible.") (emphasis in original). Here, Plaintiffs cannot state a claim under the FLSA or IMWL if they are unable to identify the weeks in which they were not paid the minimum wage. *See Hirst*, 283 F. Supp. 3d at 692 ("A plaintiff's concession that she cannot determine her hourly wage over the course of any workweek is a concession that she cannot state a FLSA minimum wage claim.").

10

Because Plaintiffs cannot allege a single workweek in which the Staffing Agency Defendants paid them less than minimum wage, they cannot state a claim under the FLSA or the IMWL.

As *Hirst* demonstrates, Plaintiffs cannot evade their obligation to allege minimum wage claims against each Staffing Agency Defendant through blanket allegations and abstract theories asserted on a collective basis. Further, because Plaintiffs did not work for each of the Staffing Agency Defendants concurrently or under the same terms and conditions, Plaintiffs cannot be permitted to allege blanket claims against the Staffing Agency Defendants on a collective basis by relying on allegations spanning more than a ten-year period. *See Trujillo v. Mediterranean Kitchens, Inc.*, No. 17-CV-01887, 2017 WL 2958240, at *1 (N.D. Ill. July 11, 2017) ("Indeed, in pleading that he worked overtime in 'one or more' weeks over the course of his decade of employment, [the plaintiff] Trujillo could mean there was a single week more than a decade ago for which he was not payed overtime, or that there have been more than 520 such weeks, or something in between those extremes."). For these reasons as well, this Court should dismiss Plaintiffs' claims with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing Counts I through IV, XI-XV, and XVI-XIX of Plaintiffs' Fourth Amended Complaint with prejudice.

Dated: January 8, 2019                                              Respectfully submitted,


By: */s/ Michele D. Dougherty*                          By: */s/ Antonio Calderone*
Carter A. Korey                                                        Antonio Caldarone
Elliot Richardson                                                      Peter J. Gillespie
Michele D. Dougherty                                            Laner Muchin, Ltd.
Amy S. Finn                                                              515 N. State St., Suite 2800
Korey Richardson LLP                                            Chicago, Illinois 60654
20 S. Clark St., Suite 500                                        (312) 467-9800

Chicago, Illinois 60603
Phone: (312) 372-7075

Steven Blonder
Much Shelist, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Phone: (312) 521-2402

*Attorneys for Defendant Ron's Temporary Help Services, Inc.*

(312) 467-9479 (fax)

*Attorneys for Defendant Elite Staffing, Inc.*

By: */s/ Aaron W. Chaet*
Kerry E. Saltzman
Aaron W. Chaet
Williams, Bax & Saltzman, P.C.
221 N. LaSalle St., Suite 3700
Chicago, Illinois 60601
T: (312) 372-3311

*Attorneys for Defendant Flexible Staffing Services, Inc.*

Documents\4829-3447-7189.v1-1/8/19

## **CERTIFICATE OF SERVICE**

      Michele D. Dougherty certifies that she caused a copy of the foregoing Certain Staffing Agency Defendants' Reply in Support of their Joint Motion to Dismiss Counts I-IV, XI-XV, and XVI-XIX of Plaintiffs' Fourth Amended Class Action Complaint Pursuant to Rule 12(b)(6) to be served upon all counsel of record by this Court's electronic-filing system this 8th day of January, 2019.

                                              /s/ *Michele D. Dougherty*
                                              Michele D. Dougherty